IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| VERONICA MICHELLE DAVIS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 17-06047-CV-SJ-ODS |
| ) | |
| CHRIS MCBEE,[1] Warden, ) | |
| Chillicothe Correctional Center, ) | |
| ) | |
| Respondent. ) | |

<u>ORDER AND OPINION (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS,
(2) DENYING ISSUANCE OF CERTIFICATE OF APPEALABILITY,
AND (3) DISMISSING MATTER WITH PREJUDICE</u>

Pending is Petitioner Veronica Michelle Davis's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Doc. #1. For the following reasons, the Court denies the Petition, and declines to issue a Certificate of Appealability.

## I. **BACKGROUND**

The underlying facts were summarized by the Missouri Court of Appeals:

> At the time of trial, Defendant had three minor children, two girls, C. and K., and one boy, J. (collectively, "the children"). Near the end of 2005 or the beginning of 2006, the children were in State custody as Defendant was hospitalized for a drug problem. While the children were in State custody, Defendant began dating Nelson. In November 2006, Defendant told Sheena Petit ("Juvenile Officer") that Nelson was living in her home. Juvenile Officer asked for Nelson's information so she could run a background check on him. Nelson told Defendant he had been accused of touching his step-daughter. The background check conducted by Juvenile Officer confirmed Nelson was a registered sex offender. Defendant "felt no need for concern with it[,]" but Juvenile Officer told Defendant that Nelson could not have any contact with the children while they were in State custody. Defendant told Juvenile Officer she would comply with this requirement.

---

[1] Alana Boyles is no longer warden of the Chillicothe Correctional Center where Petitioner is confined. McBee is substituted as Respondent. Fed. R. Civ. P. 25(d).

In May 2007, however, Juvenile Officer discovered Nelson was having contact with the children when they were staying with Defendant for weekend visits. Defendant's visits were suspended for some time. Juvenile Officer had strong concerns about the children, especially C., who was about the same age as the victim in Nelson's previous sex offender case. Nonetheless, the children were eventually returned to Defendant on December 17, 2007.

Defendant married Nelson on January 1, 2008. In February 2008, Defendant filed a petition for an order of protection from Nelson. In that petition, she described Nelson's violence towards her. She stated Nelson was "unpredictable" with her and the children. She also stated "I'm afraid he will harm us." Sometime later, Juvenile Officer saw Defendant and C. at a grocery store. Defendant leaned down to C., pointed to Juvenile Officer and said "You don't ever tell this woman anything."

In May 2008, Defendant was remanded to the Department of Corrections on another case. In June 2008, Children's Division received a referral indicating that upon her incarceration, Defendant had left the children in Nelson's care. A Children's Division investigator, Jessica Tyrell ("Investigator"), and a sheriff's deputy went to Nelson's residence to investigate. Investigator informed Nelson she had received a referral regarding his care of the children. Nelson advised he had a power of attorney from Defendant and showed Investigator a handwritten, notarized document in which Defendant said she was giving custody of the children to Nelson. Investigator explained the children had been placed in protective custody and removed the children from the home.

After their removal, C. and K. made disclosures of sexual abuse. C. and K. were interviewed at the Lakes Area Child Advocacy Center. In one of those interviews, the interviewer asked C. if she ever told anyone about the abuse. C. replied she had told "you guys." The interviewer then asked if C. had ever told anyone else. C. said she had told her mother, Defendant. C. also explained Defendant and Nelson had a fight "because I told." Nelson was subsequently convicted of several sex offenses involving C. and K.

Defendant was charged with two counts of first-degree endangering the welfare of a child. At the time of trial, C. was 10 years old, J. was 9 years old, and K. was 8 years old. C. testified at trial. C. explained Nelson had touched her inappropriately. C. said she did not tell Defendant that Nelson was doing things to her that she did not like, because Defendant told her not to tell her if something happened and that Defendant would kill the children if C. told. The trial court found Defendant guilty as charged. The trial court sentenced her as a prior and persistent offender to two concurrent terms of eight years['] incarceration.

Doc. #7-5, 4-6. Petitioner appealed her conviction to the Missouri Court of Appeals, which affirmed the trial court's judgment. Doc. #7-5, at 3-10; *State v. Davis*, 407 S.W.3d 721 (Mo. Ct. App. 2013). The Missouri Court of Appeals issued its mandate on October 2, 2013. Doc. #1, at 2; Doc. #7-5, at 2.

On December 12, 2013, Petitioner, proceeding pro se, sought post-conviction relief in Missouri state court. Doc. #7-6, at 8-14.[2] With the assistance of counsel, an amended motion was filed on July 10, 2014, alleging ineffective assistance of counsel. Doc. #7-6, at 15-31. After an evidentiary hearing on June 30, 2015, Petitioner's amended motion was denied. Doc. #7-7; Doc. #7-6, at 31-36. Petitioner appealed to the Missouri Court of Appeals, but later voluntarily dismissed her appeal. Doc. #1, at 6; Doc. #7-8. The Missouri Court of Appeals dismissed the appeal, and issued its mandate on May 4, 2016. Doc. #7-9.

On April 18, 2017, Petitioner filed a petition for writ of habeas corpus. Doc. #1. She asserts claims based upon alleged ineffective assistance of trial. Doc. #1, at 16. Respondent opposes Petitioner's request for a writ of habeas corpus. Doc. #7. After Petitioner failed to timely file her reply, the Court directed Petitioner to file a reply by no later than September 1, 2017. Doc. #8. On September 1, 2017, Petitioner filed a "Notice." Doc. #9. Therein, Petitioner's counsel states he "can find no authority to refute claims…about the timeliness of the petition, and does not believe there is a credible argument to be made for equitable tolling…." *Id.* Thus, Petitioner's counsel believed "the filing of a traverse would be of no additional benefit to the Court." *Id.* Petitioner's request for a writ of habeas corpus is now ripe for consideration.

---

[2] In her Petition, Petitioner states she filed her post-conviction motion on July 10, 2014. Doc. #1, at 3. But that motion is date-stamped December 12, 2013. Doc. #7-6, at 8-14. Petitioner's amended motion was filed on July 10, 2014. Doc. #7-6, at 15-31. There is no indication that the amended motion did not relate back to the initial motion. Further, Respondent utilizes December 12, 2013, as the date Petitioner's post-conviction motion was filed. Doc. #7, at 4.

3

## II.     DISCUSSION[3]

Respondent argues the Petition is untimely, and therefore, should be denied. The time limitation for filing claims under 28 U.S.C. § 2254 is as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) (1996). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." *Id.*, § 2244(d)(2). According to the Eighth Circuit, "[t]he term 'pending' includes the interval between the trial court's denial of postconviction relief and the timely filing of an appeal from the denial…, but not the time between the date direct review concludes and the date an application for state postconviction relief is filed." *Beery v. Ault*, 312 F.3d 948, 950 (8th Cir. 2002) (citations omitted).

Petitioner's direct appeal concluded on October 2, 2013, with the issuance of a mandate by the Missouri Court of Appeals. The statute of limitations began to run on that date. 28 U.S.C. § 2244(d)(1)(A). Petitioner filed a post-conviction motion 71 days later, on December 12, 2013. Once Petitioner filed her post-conviction motion, the one-year statute of limitations was tolled until a final decision was issued on her post-

---

[3] The Court concludes a hearing is not necessary because Petitioner's claims can be evaluated based on the record.

4

conviction proceedings. *See Boston v. Weber*, 525 F.3d 622, 624-26 (8th Cir. 2008) (citation omitted) (stating the time between the date the direct review of the conviction is complete and the date on which an application for post-conviction relief is filed counts against the one-year period). On May 4, 2016, the Missouri Court of Appeals issued its mandate on Petitioner's appeal of the denial of post-conviction motion. On that date, the statute of limitations began to run again. *Beery*, 312 F.3d at 950. Petitioner filed her petition with this Court on April 18, 2017, 349 days after the mandate was issued.

When combining (a) 71 days between the mandate on Petitioner's direct appeal and the filing of her post-conviction motion with (b) 349 days between the mandate on Petitioner's post-conviction motion and the filing of this matter, a total of 420 days passed. Petitioner did not file her Petition within the time permitted by the one-year statute of limitations. Petitioner concedes this fact in the "Notice" filed with the Court. Doc. #9. Petitioner also conceded there was no credible argument to be made for equitable tolling. *Id.* The Court finds Petitioner's Petition is untimely, and the Petition is denied.

### III. CERTIFICATE OF APPEALABILITY

The Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

### IV. CONCLUSION

For these reasons, Petitioner's request for habeas corpus relief pursuant to 28 U.S.C. § 2254 is denied, the issuance of a certificate of appealability is denied, and this matter is dismissed with prejudice.

IT IS SO ORDERED.

DATE: September 6, 2017

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT